**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-02385-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Stephen M. Kerr, Michael Quiel, | |
| Defendants. | |

Pending before the Court is Defendants' Joint Motion for New Trial or to Dismiss. (Doc. 454).

**I.      Background**

On December 8, 2011, a grand jury indicted Michael Quiel ("Quiel") and Stephen Kerr ("Kerr") on a variety of crimes concerning failure to pay taxes on funds held in Swiss corporations. (Doc. 3). Each Defendant was charged with one count of Conspiracy to Defraud the United States, two counts of Willful Subscription to False Individual Income Tax Returns, and two counts of Willful Failure to File Reports of Foreign Bank and Financial Accounts ("FBAR"). (*Id.*).

Defendants were not alone in the indictment. Christopher Rusch ("Rusch"), Defendants' former attorney, was charged with one count of Conspiracy to Defraud the United States. (*Id.*). An additional charge of failure to file an FBAR was later added. (Doc. 331 at 1607). Rusch entered into a plea agreement, which compelled him to testify at the request of the United States. (Doc. 415).

A month-long jury trial began in early March. (Doc. 221); (Doc. 281). At trial, Rusch testified against Defendants. (Doc. 331). On direct examination, he admitted to engaging in illegal activity by improperly structuring the Swiss businesses controlled by Quiel and Kerr. (*Id.* at 1675). On cross-examination, Defendants introduced evidence to impeach Rusch. (Doc. 454 at 5); (Doc. 457 at 2).

Both Defendants were acquitted of Count One (Conspiracy to Defraud the United States). Kerr was found guilty of Counts Two & Three (Willful Subscription to False Individual Income Tax Returns for 2007 and 2008) and Counts Six & Seven (Willful Failure to File FBARs for 2007 and 2008). (Doc. 281). Quiel was found guilty of Counts Four & Five (Willful Subscription to False Individual Income Tax Returns for 2007 and 2008). (*Id.*). In addition, the jury hung as to Counts Eight & Nine (Willful Failure to File FBARs for 2007 and 2008). (*Id.*).

Following the verdict, Defendants were each sentenced to ten months in prison. (Doc. 373); (Doc. 376). Subsequently, Defendants moved for acquittal or alternatively a new trial. (Doc. 299); (Doc. 300). These motions were denied. (Doc. 345); (Doc. 346).

On appeal, the Ninth Circuit Court of Appeals affirmed the convictions. *United States v. Quiel*, 595 F. App'x 692 (9th Cir. 2014), *cert. denied*, No. 14–1237, 2015 WL 1692989 (May 18, 2015). Now, Defendants request a new trial or alternatively an evidentiary hearing, in light of allegedly newly discovered evidence. (Doc. 454). Defendants have three different pieces of allegedly newly discovered evidence.

### A. Rusch's Alleged Fraud

First, Defendants claim that evidence has emerged showing that Rusch engaged in fraudulent activities, before and during the trial, under the alias Christian Reeves. (*Id.* at 1–9). Defendants contend that examples of this fraud include Rusch: blogging as Reeves in early 2013, (*Id.* at 4); posting on ex-pat investing sites as Reeves starting in 2012, (*Id.* at 6); giving tax advice as Reeves, (*Id.*); podcasting as Reeves, (*Id.*); marketing himself as a rehabilitated lawyer, (*Id.*); and publishing an offshore tax guide after pleading guilty, but before trial, (*Id.*). Furthermore, Defendants allege that Rusch has admitted to being

Reeves. (Doc. 459 at 3).

Defendants argue that they could have used the evidence of Rusch's ongoing fraud to impeach his testimony at trial. (Doc. 454 at 13). Defendants further claim that if the Government was aware of Rusch's illegal activity, but did not disclose this information to Defendants, then a *Brady* violation has occurred, justifying a new trial. (*Id.* at 12−14).

Defendants further argue that even if the Government was not aware of this information, the newly discovered evidence, of its own force, justifies a new trial. (*Id.* at 14).

### B. Rusch's Alleged Undisclosed Benefit

Second, Defendants allege that the Government has agreed "to look the other way while its witness commits additional crimes." (*Id.* at 10). Defendants claim that the Government has given Rusch a "fresh start" by allowing him to continue his allegedly fraudulent activity. (Doc. 458 at 7). Defendants argue that this "fresh start" is the product of an undisclosed agreement between Rusch and the Government. (*Id.* at 7) ("*Brady* and due process require that the Government turn over information about the full benefits and promises that the witness received for his co-operation, to include non-enforcement of civil penalties.") (citing *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986)).

### C. Trial Exhibits 51 and 52

Third, Defendants allege that Pierre Gabris, a Swiss-national and alleged participant in the structuring of the Swiss accounts, would testify that "he did not prepare or send trial exhibits 51 and 52," which were offered into evidence on Rusch's re-direct. (*Id.* at 15). These exhibits contain emails originally sent from Gabris to Rusch, who forwarded them to Defendants, regarding accounting statements from Defendants' Swiss corporations. (Doc. 335 at 2533). Defendants argue that these allegedly forged documents provide further support for a new trial. (Doc. 454 at 15−16).

## II. Applicable Legal Standards

Defendants claim that their newly discovered evidence satisfies the Rule 33 new trial test. (*Id.* at 14). This test requires Defendants to show: (1) that the evidence is newly

discovered; (2) that Defendants' failure to discover the evidence sooner was not the result of a lack of diligence; (3) that the evidence is material; (4) that the evidence is neither cumulative nor merely impeaching; and (5) that a new trial would likely result in acquittal. *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991).

In addition, Defendants argue that they are due a new trial under *Brady v. Maryland*. (Doc. 454 at 12–14); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prove a *Brady* violation, Defendants must show that: (1) the evidence is newly discovered; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material. *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008).

Finally, Defendants allege that trial exhibits 51 and 52 are forgeries. (Doc. 454 at 15). While Defendants assert that these forgeries entitle them to a new trial under *Brady*, this evidence is properly considered under *Napue v. Illinois*, because the evidence was not suppressed.[1] *Napue v. Illinois*, 360 U.S. 264 (1959). To establish a *Napue* violation, Defendants must prove that: (1) there was false evidence; (2) the prosecution knew, or should have known that the evidence was false; and (3) the evidence was material. *Towery v. Schriro*, 641 F.3d 300, 308 (9th Cir. 2010) (citing *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).

Because both *Brady* and *Napue* violations are implicated by Defendants' allegations, the Court will use a two-step test described in further detail below, *see supra* Part II.D, to determine materiality.

Finally, to determine whether Defendants are entitled to an evidentiary hearing, the Court will presume that their allegations are true.

### A. Rule 33 New Trial Test

Under Rule 33, a defendant may "move for a new trial on newly discovered

---

[1] The Court notes that neither party cited the *Napue* test with regard to trial exhibits 51 and 52. While *Brady* and *Napue* violations can overlap, *see Giglio v. United States*, 405 U.S. 150 (1972) (finding both violations where the prosecution did not disclose an informant-witness's plea deal and did not correct the witness who committed perjury by denying the existence of a plea deal while testifying), the essence of Defendants' allegation is that this evidence was false; not that it was suppressed. Therefore, this evidence is properly considered under *Napue*; not *Brady*.

evidence" within three years of the verdict. Fed. R. Crim. P. 33. The Court may "grant a new trial if the interest of justice so requires." *Id.* These motions "are not favored by the courts and should be viewed with great caution." *United States v. Marcello*, 568 F. Supp. 738, 740 (C.D. Cal. 1983), *aff'd* 731 F.2d 1354 (9th Cir. 1984) (citing 3 Charles Alan Wright, *Federal Practice and Procedure: Criminal* § 557 (2d ed. 1982)). To obtain a new trial, Defendants must satisfy each prong of a five-part test:

(1) the evidence must be newly discovered;

(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on . . . [Defendants'] part;

(3) the evidence must be material to the issues at trial;

(4) the evidence must be neither cumulative nor merely impeaching; and

(5) the evidence must indicate that a new trial would probably result in acquittal.

*United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991).

The materiality and probability prongs are essentially the same. *United States v. Krasny*, 607 F.2d 840, 845 n.3 (9th Cir. 1979). Accordingly, they will be treated concurrently.

### 1. Newly Discovered

Rule 33 requires that evidence be newly discovered. *Kulczyk*, 931 F.2d at 548. Evidence is not newly discovered if it "was known to, or was in the possession of, the defense" before the trial concluded. *United States v. Hinkson*, 585 F.3d 1247, 1284 (9th Cir. 2009) (*en banc*) (Fletcher, J., dissenting).

#### a. Rusch's Alleged Fraud and Rusch's Alleged Undisclosed Benefit

Defendants allege that they discovered Rusch's fraudulent activities performed under the Reeves alias after trial. (Doc. 454 at 4). Because Defendants allegedly learned of this information after trial, the newly discovered test is satisfied.

#### b. Trial Exhibits 51 and 52

Notwithstanding the Reeves allegation, Defendants do not allege when they

1 learned that Gabris did not send the emails constituting trial exhibits 51 and 52. (*Id.* at 15). The heading above Defendants' claim reads: "The Discovery of Allegedly Forged Documents Further Provides the Basis for a New Trial." (*Id.*). This does not indicate when the discovery occurred. Additionally, the evidence allegedly arose from "conversations between Mr. Quiel's attorney, Mr. Gabris' attorney, and conversations between Mr. Gabris and Mr. Quiel outside the presence of Counsel"; there is no mention of when these conversations took place. (*Id.*). Furthermore, the Government noted the temporal-vacancy of the allegation, (Doc. 457 at 8), but Defendants failed to address this concern in their Reply, (Doc. 458).

Consequently, without a description of when this discovery was made, the Court cannot find a concrete allegation that the evidence is newly discovered. Therefore, because Defendants fail to meet their burden, the alleged evidence regarding trial exhibits 51 and 52 cannot be considered newly discovered.

### 2. Diligence

"Due diligence means ordinary, rather than extraordinary, diligence." *United States v. Walker*, 546 F. Supp. 805, 811 (D. Haw. 1982). The trial judge "has a large discretion in . . . determining what diligence is necessary." *Prlia v. United States*, 279 F.2d 407, 408 (9th Cir. 1960). In *United States v. Harrington*, the court found that the movant was not diligent in obtaining photographs of the crime scene and a map of the surrounding streets because this information "could have been obtained at any time." *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005).

#### a. Rusch's Alleged Fraud and Rusch's Alleged Undisclosed Benefit

While it is possible that the evidence of Rusch's alleged out-of-court activities could have been "discovered at any time" in the literal sense, this situation is distinguishable from *Harrington*, as the evidence in that case concerned the actual crime of which the defendant was convicted: selling LSD in that area. *Id.* In the present case, the proposed evidence concerns Rusch's conduct which was not associated with the activity of which Defendants were convicted. Therefore, an ordinarily-diligent defendant

would not be expected to discover this evidence. Accordingly, Defendants' failure to discover this evidence in time for trial does not violate the diligence standard.

### 3. Cumulative/Impeachment Evidence

Generally, impeachment evidence does not justify a new trial. *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992). Nevertheless, a new trial is warranted where "impeachment evidence [is] . . . so powerful that, if it were to be believed by the trier of fact, it could render the witness' testimony totally incredible." *Id.* In these situations, the new evidence nullifies "an essential element of the government's case." *Id.*

#### a. Rusch's Alleged Fraud and Rusch's Alleged Undisclosed Benefit

While Defendants do describe Rusch's allegedly impeaching activity, they do not show how this evidence would negate an essential element of the Government's case. (Doc. 454). Therefore, because Defendants have not met their burden, their allegations do not warrant a new trial under Rule 33.

### 4. Probability of Acquittal and Materiality

Because Defendants claims do not satisfy the prior elements of this test, materiality and probability of acquittal will not be considered at this juncture.

## B. *Napue* Test

Under *Napue*, "[t]he knowing use of false evidence by the state, or the failure to correct false evidence, may violate due process." *Towery v. Schriro*, 641 F.3d 300, 308 (9th Cir. 2010) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To demonstrate a *Napue* violation, the movant must show that: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material." *Id.* (quoting *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).

### 1. Falsity
#### a. Rusch's Alleged Fraud and Rusch's Alleged Undisclosed Benefit

Defendants do not allege that Rusch's illegal activity or the undisclosed leniency agreement caused false evidence or perjury to be introduced at trial. (Doc. 454).

- 7 -

Therefore, these claims do not satisfy *Napue*.

### b. Trial Exhibits 51 and 52

In contrast, Defendants do allege that trial exhibits 51 and 52 were falsified. (Doc. 454 at 15). Defendants claim that Gabris will testify that he did not send the emails to Rusch that constitute trial exhibits 51 and 52. (*Id.*). However, even if true, this does not establish that the evidence itself was false.

Allegedly, trial exhibits 51 and 52 were used to "'prove' distributions that were never made." (Doc. 454 at 15). Defendants claim that this evidence "supported the 'nominee theory'" of structuring, whereby an American impermissibly controls a foreign company through a nominee without paying taxes on funds held in that company. Defendants allege that had the jury known that the exhibits were falsified, they may have "acquitted Quiel on the tax charges." (*Id.* 16–17). Exhibit 51 is an email from Gabris to Rusch containing an accounting statement for the Swiss business accounts owned by Quiel. (Doc. 335 at 2534). This email was subsequently forwarded to Quiel. (*Id.*). Exhibit 52 was not mentioned after it was introduced into evidence. (*See id.*).

When the exhibits were introduced, defense counsel objected, arguing that "[t]hey're beyond the scope. And they're the hearsay statements of Mr. Pierre Gabris, who [defense counsel] will not have an opportunity to cross-examine." (Doc. 335 at 2534). In response, the prosecutor argued that during cross-examination Rusch was questioned "about providing information to the defendants. The implication was [that] he did not actually provide anything to defendants. These are being offered to rebut that. And they're not being offered for the truth of anything in the document, but just to their existence." (*Id.*). After hearing the explanation, the Court overruled the objection, and the evidence was admitted. (*Id.*).

Defendants do not contend that they were never forwarded the emails by Rusch. (*See* Doc. 454). Therefore, the evidence, which was used to establish that Rusch sent Quiel financial information regarding Quiel's Swiss accounts, is not changed by the fact that Gabris allegedly did not send the original emails to Rusch.

For evidence to be false under *Napue*, the falsity must be material to the purpose for which the evidence was used. *Cf. United States v. Vozzella*, 124 F.3d 389, 392 (2d Cir. 1997) (emphasis added) (finding falsity where "records were known to be partially false and were presented to the jury in a fashion so highly misleading *as to amount to falsity regarding their veracity as a whole*."). Where evidence is partially false, but the false portion of the evidence has no bearing on the purpose for which the evidence is used, there is no risk that "a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). Consequently, insofar as trial exhibit 51 was used to support Rusch's testimony that he sent an email containing Swiss accounting statements to Quiel, the evidence was not false.

### 2. Knowledge and Materiality

Because Defendants fail to show that any of the allegedly newly discovered evidence was falsified, they fail to satisfy the *Napue* test. Therefore knowledge and materiality do not need to be considered.

### C. *Brady* Test

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). For a *Brady* violation to occur, three elements must be present: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The Defendants have the burden of establishing the presence of these elements. *United States v. Lopez*, 577 F.3d 1053, 1059 (9th Cir. 2009).

### 1. Favorable Evidence

Under *Brady*, newly discovered evidence that is favorable to the defense must be admissible, or must be able to impeach the Government's witness. *United States v. Kohring*, 637 F.3d 895, 903 (9th Cir. 2010).

#### a. Rusch's Alleged Fraud

Defendants wish to introduce evidence allegedly showing that Rusch engaged in fraudulent activities before and during trial. (Doc. 454). This evidence is both admissible and useful for impeachment. Fed. R. Evid. 608 (allowing in extrinsic evidence on cross-examination if it is "probative of the character for truthfulness or untruthfulness of" the witness). Therefore, because the evidence is admissible as impeachment material, it is favorable under *Brady*.

#### b. Rusch's Alleged Undisclosed Benefit

Defendants further allege that the Government has made an undisclosed agreement for leniency with Rusch. (Doc. 458 at 7). Such evidence would be admissible at trial and would be useful for impeaching Rusch, therefore it is favorable under *Brady*.

#### c. Trial Exhibits 51 and 52

Finally, Defendants claim that trial exhibits 51 and 52 were forged, and thus constitute false evidence. (Doc. 454 at 15). Such evidence is favorable because either Gabris's testimony that he did not send the emails would be admissible or the emails themselves might be inadmissible.

### 2. Suppression

The Government must disclose any exculpatory evidence within its possession, regardless of whether Defendants requested such evidence. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). This duty applies even if those "acting on the government's behalf" have exculpatory evidence without the prosecutor's knowledge. *Id.* at 437. A prosecutor's failure to disclose an agreement with a coconspirator in exchange for their testimony at trial constitutes suppression under *Brady*. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

### a. Rusch's Alleged Fraud

Defendants assert that the Government may have known of Rusch's illegal activity, and that this information was not disclosed to Defendants. (Doc. 454 at 9−10). They claim that without an evidentiary hearing the Court cannot know whether the Government possessed, but did not disclose, this evidence. (*Id.*). If Defendants allegations are true, the suppression element of *Brady* is satisfied.

### b. Rusch's Alleged Undisclosed Benefit

Furthermore, Defendants allege that the Government made an undisclosed agreement with Rusch to treat him with leniency after trial. (Doc. 458 at 7). Failure to disclose agreements of leniency satisfy the suppression prong of *Brady*. Therefore, if true, this allegation establishes suppression.

### c. Trial Exhibits 51 and 52

Finally, Defendants allege that the Government may have known that trial exhibits 51 and 52 were forged, and that by not disclosing this information, the Government violated *Brady*. (Doc. 454 at 15−16). Defendants are not alleging that the Government suppressed the exhibits, by that the evidence was forged. Therefore, this evidence does not satisfy the suppression prong of *Brady*.

### 3. Materiality

Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 463 U.S. at 682. The reasonable probability standard does not require the defendant to prove by a preponderance of the evidence that "disclosure of the suppressed evidence would have resulted . . . in acquittal," but merely that suppression "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434. The Court "may find a 'reasonable probability' even where the remaining evidence would have been sufficient to convict the defendant." *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 290 (1999)).

Newly discovered impeachment evidence is merely cumulative, and does not

1  violate *Brady*, where a witness's credibility was eroded by "significant impeachment
2  evidence" at trial. *Morris v. Ylst*, 447 F.3d 735, 741 (9th Cir. 2006); *accord United States*
3  *v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989) (holding that newly discovered
4  impeachment evidence "does not warrant a new trial when the evidence would not have
5  affected the jury's assessment of the witness' credibility and when the witness was
6  subjected to vigorous cross-examination.") (citing *United States v. Steel*, 759 F.2d 706,
7  714 (9th Cir. 1985)). However, "impeachment evidence . . . [is] not 'merely cumulative'
8  where the withheld evidence was of a different character than evidence already known to
9  the defense." *United States v. Kohring*, 637 F.3d 895, 904 (9th Cir. 2010) (quoting *Banks*
10 *v. Dretke*, 540 U.S. 668, 702–03 (2004)).

11     *Brady* claims are considered "collectively, but . . . [the Court] 'must first evaluate
12 the tendency and force of each item of suppressed evidence and then evaluate its
13 cumulative effect at the end of the discussion.'" *Id.* at 903 (quoting *Barker v. Fleming*,
14 423 F.3d 1085, 1094 (9th Cir. 2005)).

15                   **a.  Rusch's Alleged Fraud**

16     First, Defendants claim that Rusch engaged in fraudulent activities before and
17 during the trial without Defendants' knowledge. (Doc. 454 at 6–9). Allegedly, this
18 evidence could have been used to impeach Rusch. (*Id.*) The Government argues that
19 Rusch was already subjected to significant impeachment evidence at trial, including
20 Defendants: "pointing out inconsistencies in [Rusch's] prior statements," emphasizing
21 Rusch's "motives as a cooperator," extracting "concessions concerning his violations of
22 the ethical rules and rules of professional conduct," using "surreptitious recordings," and
23 calling "a legal ethics expert." (Doc. 457 at 5). As such, the Government claims, further
24 impeachment evidence would be merely cumulative. (*Id.*).

25     There is no proposed evidence indicating that any of Rusch's activities as Reeves
26 before or during trial were criminal in nature. While Defendants argue that Rusch has
27 committed a felony by practicing law as a disbarred attorney, and has committed fraud by
28 holding himself out as a rehabilitated attorney, (Doc. 454 at 11), neither of these activities

occurred before or during the trial. In fact, as Defendants note, Rusch was not prohibited from practicing law until June 21, 2013, (*Id.* at 6), while the verdict in this case was rendered on April 11, 2013, (Doc. 288); (Doc. 289). There is no indication that Rusch was doing anything more under the Reeve's pseudonym than what he was doing prior to his involvement with Defendants: providing tax advice for U.S. citizens seeking to do business and bank overseas. Done properly, this activity is not illegal.

Additionally, there is nothing inherently fraudulent with using a pseudonym. Therefore, it is not clear in what manner Defendants wish to use Rusch's activities before and during the trial as impeachment evidence. To the extent that they wish to reinforce his engagement with offshore tax schemes, such evidence would be merely cumulative, as he readily admitted to this sort of activity on direct. (Doc. 331 at 1613).

To the extent that Defendants allege that Rusch's engaged in post-trial illegal activity, such evidence is irrelevant for *Brady* purposes, because the Government did not possess, at or before trial, evidence it could suppress.

### b. Rusch's Alleged Undisclosed Benefit

Second, Defendants allege that the Government has allowed Rusch to engage in illegal activity without consequence as the result of an undisclosed agreement that prompted Rusch's trial testimony. (Doc. 458 at 7). The Government argues that "at no time was the United States aware of Rusch's post-trial conduct except with regard to the information provided by the U.S. Probation Department." (Doc. 460 at 2). Given that the Government did not directly deny the existence of an agreement, it is possible that there was an agreement for leniency, even without the Government's present awareness of Rusch's post-trial activities. Therefore, taking this allegation as true, a material violation under *Brady* has occurred. *Brady*. *Giglio v. United States*, 405 U.S. 150, 155 (1972) (finding that an undisclosed agreement for leniency with an important witness violated *Brady*). However, as will be discussed below, Defendants offer no evidence that such an agreement actually exists.

### D. *Brady/Napue* Two-Step Materiality

While *Brady* and *Napue* both have their own tests, they each require materiality. If *Brady* and *Napue* violations are both alleged, their materiality should be considered collectively. *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008). However, because *Napue*'s materiality test is easier to meet, *Napue* violations must be considered first, as not to "overweight" the *Brady* violations. *Id.* This process is performed in two steps.

First, the Court weighs the *Napue* violations and asks whether there is "any reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Id.* If the answer is yes, then reversal of judgment is the proper remedy. *Id.* If not, then the *Napue* and *Brady* violations are considered collectively. *Id.* Under this second test, the Court asks whether "there is a reasonable probability that, but for [the prosecutor's] unprofessional errors, the result of the proceeding *would* have been different." *Id.* If the answer to this question is yes, the remedy is generally a new trial. *Id.*

While both the allegedly forged trial exhibits and the allegations regarding Rusch engaging in fraud do not satisfy the *Napue* and *Brady* tests, the allegation regarding an undisclosed agreement satisfies *Brady*. No weight can be given to the allegations that do not satisfy either test. Therefore, the only question in this consideration is whether there is a reasonable probability that, but for the undisclosed agreement, the outcome of the trial would have been different. Because the Supreme Court has determined that the nondisclosure of an agreement for leniency with an important witness satisfies this test, *Giglio v. United States*, 405 U.S. 150 (1972), materiality under the dual *Brady/Giglio* test would be satisfied if Defendants' allegations are true. Again, however, Defendants offer no evidence that such an agreement actually exists.

### III. Evidentiary Hearing

Generally, motions for a new trial are "decided solely upon affidavits." *United States v. Colacurcio*, 499 F.2d 1401, 1406 n.7 (9th Cir. 1974). However, "[t]he decision on whether to hold a hearing or to proceed by affidavit is within the sound discretion of the trial court." *United States v. Nace*, 561 F.2d 763, 772 (9th Cir. 1977). An evidentiary

- 14 -

hearing should only be granted if the facts alleged, taken as true, would constitute grounds for a new trial. *See United States v. Scott*, 521 F.2d 1188, 1196 (9th Cir. 1975) (finding that the trial judge did not abuse his discretion in denying an evidentiary hearing where "there was nothing to be gained by such a hearing."). "Evidentiary hearings . . . are not meant to be 'fishing expeditions for . . . [Defendants] to explore their case in search of its existence.'" *Morgan v. Gonzales*, 495 F.3d 1084, 1091 (9th Cir. 2007) (quoting *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999)).

Defendants provide no affidavit to bolster their allegation that the Government has made an undisclosed agreement with Rusch. (Doc. 454). On the other hand, the Government does not explicitly deny Defendants' allegations, but rather sidesteps the issue by stating that they have not monitored Rusch's post-trial conduct. (Doc. 460 at 1–2). The Government's statements do not preclude the existence of an undisclosed agreement.[2] However, ultimately, absent an affidavit, Defendants do nothing more than speculate.

Defendants' failure to include an affidavit does not give the Court the choice between holding an evidentiary hearing or making a decision based upon affidavits; it leaves only one option. Allowing an evidentiary hearing in this case would encourage Defendants in the future, uncertain of their case for newly discovered evidence, to fail to include affidavits in an attempt to force the Court to allow an evidentiary hearing. The Court does not wish to create such an incentive. Therefore, Defendants' motion for an evidentiary hearing is denied, because on this record it would be nothing more than a fishing expedition.

Thus, although Defendants' claim that Rusch has an ongoing, undisclosed

---

[2] Specifically, the Government does not expressly deny that the reason it has not monitored Rusch's post-trial activity is because of an undisclosed agreement to not monitor him and grant him leniency in his future dealings. For purposes of this order, the Court has interpreted the Government's statements as a denial of having any undisclosed agreement regarding future activities with Rusch. If the Government actually has any such agreement, and has artfully worded its representations to not directly address Defendants' allegations, the Government is ordered to correct the Court's interpretation immediately and the Court would deem any failure to correct the Court's understanding to be a fraud on the Court and a *Giglio* violation.

- 15 -

1 leniency agreement with the Government would entitle Defendants to relief, because
2 Defendants offer no affidavit or other evidence showing that such an agreement exists,
3 and the Government has effectively denied the existence of an agreement, the Court will
4 not hold an evidentiary hearing or grant a new trial. Indeed, Defendants do not even
5 suggest what witnesses they would call or what evidence they would produce at an
6 evidentiary hearing that would substantiate the allegation that Rusch has an agreement
7 with the Government beyond the plea agreement already disclosed. Thus, the Court will
8 not allow a fishing expedition on this topic.

## IV. Conclusion

### A. Rusch's Alleged Fraud

First, this evidence does not satisfy the Rule 33 test, because it is impeachment evidence that does not negate an essential element of the Government's case.

Second, this Court already determined this evidence was immaterial under *Brady*, because there is no alleged evidence regarding Rusch's conduct, both before and during trial, that would constitute more than merely cumulative impeachment material.

Third, this evidence was determined to not satisfy the *Napue* test, because there is no allegation that this evidence resulted in false evidence or perjured testimony being introduced at trial.

### B. Rusch's Alleged Undisclosed Benefit

First, this evidence fails the Rule 33 test because it is impeachment evidence which does not negate an essential element of the Government's case.

Second, this evidence, taken as true, satisfies the *Brady* test, because the existence of an undisclosed agreement is material under *Brady*. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). However, Defendants have offered no evidence beyond their speculation that any such agreement exists; therefore, Defendants are not entitled to relief as to this claim.

Third, this evidence fails the *Napue* test, because there is no allegation that this evidence resulted in false evidence or perjured testimony being introduced at trial.

**C.     Trial Exhibits 51 and 52**

First, the allegations regarding trial exhibits 51 and 52 being forged do not satisfy the Rule 33 test, because there is no allegation that this evidence is newly discovered.

Second, this evidence does not satisfy the *Brady* test, because there is no allegation that this evidence was suppressed.

Third, this evidence does not satisfy the *Napue* test. This evidence was introduced for the purpose of supporting the proposition that Rusch sent an email containing financial statements to Quiel. For this purpose, the evidence was not false, and thus fails to satisfy the falsity prong of the *Napue* test.

Accordingly,

**IT IS ORDERED** that Defendants Joint Motion for New Trial or to Dismiss and Request for an Evidentiary Hearing, (Doc. 454), is denied.

Dated this 14th day of July, 2015.

James A. Teilborg
Senior United States District Judge